**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO. 5:13-CV-98**

| | |
|---|---|
| JOHN WALTER. DAVIS, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

**BEFORE THE COURT** are cross-motions for summary judgment filed by Plaintiff John W. Davis ("Davis" or "Plaintiff") and Defendant Carolyn W. Colvin ("Commissioner" or "Defendant"). (Docs. 9, 11). Also before the Court is Davis's "Reply" analyzing the case of *Harlan v. Colvin*, No. 3:12CV443, 2013 WL 6729605, at *1 (W.D.N.C. Dec. 19, 2013). (Doc. 14). For the following reasons, this Court will **DENY** Davis's Motion for Summary Judgment, **GRANT** the Commissioner's Motion for Summary Judgment, and **AFFIRM** the Commissioner's determination.

I.   **ADMINISTRATIVE HISTORY**

On January 28, 2010, Davis filed applications for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 405 *et seq.*, and for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. §1383 *et seq.*, with an alleged onset date of December 31, 2005. (Tr. 27). These claims were denied at the initial level, and later upon reconsideration. (Tr. 123-130, 139-45). Plaintiff subsequently requested a hearing which was held before Administrative Law Judge Michelle D. Cavadi ("ALJ") on December 7, 2011. (Tr. 40-69).

1

A. The ALJ's Decision

The ALJ found Plaintiff not disabled. (Tr. 27-37). At step one, the ALJ found that Davis had not engaged in substantial gainful activity since his alleged onset date of December 31, 2005. (Tr. 29, ¶ 1). At step two, the ALJ found that Davis suffered from the following severe impairments: depression, a learning disorder, and schizoaffective disorder. (Tr. 30, ¶ 3). At step three, the ALJ found that Davis's impairments did not meet the Listings in 20 C.F.R. Part 404, Appendix 1. Next, the ALJ found that Davis has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, as defined in 20 C.F.R. §§ 404.1567 and 416.967, but would be restricted to performance of work involving simple, routine and repetitive tasks in a non-production oriented setting, and an environment that requires no contact with the public and no more than occasional contact with co-workers or supervisors. (Tr. 31-35, ¶ 5). The ALJ then found that Davis could not perform his past relevant work but, based on the RFC and testimony from the vocational expert, there were significant jobs in the regional and national economies that he could perform. (Tr. 35-37). Therefore, the ALJ found that Davis was not disabled. After this unfavorable decision, Davis appealed to the Appeal Council who granted his request for review. (Tr. 10-15).

B. The Appeals Council Decision

The Appeals Council issued a decision that was partially favorable to Davis, finding a closed period of disability from December 31, 2005 through June 1, 2009. The Appeals Council adopted the ALJ's findings at steps one through five for the period after June 1, 2009, but did not do so for the period of December 31, 2005 through June 1, 2009. (Tr. 11).

Specifically, the Appeals Council found that the ALJ was correct at steps one and two but erred at step three. The Appeals Council found that Davis met Listing 12.03[1] beginning on December 31, 2005 and ending on June 1, 2009. (Tr. 11). In doing so, the Appeals Council credited the mental health treatment notes of Dr. Murray Hawkinson and the April 8, 2013 opinion rendered by Dr. Alvin Smith. (Tr. 11-12).

The Appeals Council found that the Davis's condition improved as of June 2, 2009 "because there was a decrease in severity of his impairments so that they no longer met or equaled a listing." (Tr. 12). The Appeals Council then found that the medical improvement was related to Davis's ability to work and that beginning on June 2, 2009, there were jobs that exist in significant numbers in the national economy that Davis could perform. (Tr. 12).

## II. DAVIS'S APPEAL

Davis is seeking judicial review of the Commissioner's denial of DIB under Title II. (Doc. 9-1, at 1). Davis argues (1) that the Commissioner erred by failing to follow the correct legal standard for finding medical improvement in a closed period case; and (2) that the Commissioner's decision that Davis did not meet Listing 12.03 is not supported by substantial evidence. The Commissioner disagrees. Davis asserts he is entitled to an award of disability benefits from June 2, 2009 forward or, in the alternative, seeks a remand. (*Id.* at 18).

## III. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner applied the correct legal standards.

---

[1] The Court notes that the Appeals Council only mentioned 12.03(A) explicitly, but listed the rules for both 12.03(A) and 12.03(B), which is consistent with the requirement that both must be satisfied.

3

*Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; [i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater,* 76 F.3d 585, 589 (4th Cir.1996) (quoting *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir.1966)) (internal quotation marks and citation omitted). "In reviewing for substantial evidence, [a court] do[es] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (quoting *Craig*, 76 F.3d at 589)).

## IV.     ANALYSIS

### A.     The Appeals Council Followed the Correct Legal Standard for Finding Medical Improvement in a Closed Period Case

Davis has a two-fold argument regarding this issue. First, Davis argues that he was not given proper notice and that the Appeals Council should have remanded the case for a rehearing on whether or not medical improvement occurred. Second, Davis argues that the Appeals Council did not follow the eight steps set out in 20 C.F.R. § 404.1594(f). The Court will address these arguments in turn.

#### 1.     Proper Notice Was Given

Davis contends that it was to his "great surprise" that the Appeals Council found a closed period of disability. (Doc. 9-1, at 6). The Court finds that this use of rhetoric is inappropriate because Plaintiff and his counsel were given advance notice that the Appeals Council intended to find a closed period of disability. (Tr. 10).

4

Nevertheless, Davis contends that he was entitled to notice of cessation of disability and should have been given a chance to reply, citing 20 C.F.R. § 404.1595(a) and (b). (Doc. 9-1, at 6). Davis admits that he received the notice from the Appeals Council dated April 19, 2013, but argues that it is not sufficient to meet the aforementioned regulation. (*Id.*).

Defendant states that 20 C.F.R. § 404.1595 is "not applicable to a closed period of disability within the adjudication of a single claim, where the individual was not previously receiving benefits." (Doc. 12, at 5). In the alternative, Defendant states that the notice complied with § 404.1595 and that nothing in the regulation requires a new hearing prior to a finding of medical improvement or cessation of benefits.

The Court finds that if § 404.1595 is applicable, it has been complied with in this instance.[2]

The regulation provides that a person will receive advance notice when the Social Security Administration ("SSA") has determined that a person is no longer disabled. 20 C.F.R. § 404.1595(a). The advance notice will give a summary of information the SSA has and reasons why the SSA considers the person not disabled. § 404.1595(b). Further, it offers a chance to reply. § 404.1595(b). The notice will state the medical information in the person's file and the work activity and how that bears on a finding of not disabled. § 404.1595(b). A person may give the appropriate office "additional or new information" if they disagree with the proposed finding. § 404.1595(c). Nowhere in the regulation is a right to a rehearing.

The notice given to Plaintiff was the equivalent of a rough draft of the actual decision. (Tr. 187-191). It specifically told Plaintiff that the Appeals Council intended to reverse the ALJ. It also told Plaintiff that the Appeals Council would find a closed period of disability ending on

---

[2] Given this finding, the Court declines to issue an exhaustive opinion regarding the applicability of § 404.1595 to a finding of a closed period of disability within the adjudication of a single claim where the individual was not previously receiving benefits.

5

June 1, 2009. (Tr. 189). The Appeals Council summarized the medical records before it. (Tr. 187-191). The Appeals Council also gave Plaintiff the opportunity to send "more evidence or a statement about the facts and the law in [his] case within 30 days of this letter." (Tr. 189). Plaintiff availed himself of this opportunity. (Tr. 10, 338-343). Therefore, the Court declines to allow remand pursuant to this argument.

2. The Appeals Council Complied with 20 C.F.R. § 404.1594

Davis contends that the Appeals Council did not follow the eight-step process set out in 20 C.F.R. § 404.1494(f). Specifically, Davis argues that the Appeals Council should have "compare[d] the claimant's current RFC to his prior RFC." (Doc. 9-1, at 7). The Commissioner argues that since the Appeals Council found Davis disabled pursuant to the Listings, Davis never had a prior RFC. (Doc. 12, at 9).

Section 404.1594(f) lays out eight steps that the SSA must follow when it finds medical improvement of a previously established disabling condition. These requirements are different, but overlap substantially, with the five-step sequential evaluation process. *Compare* 20 C.F.R. § 404.1520 *with* 20 C.F.R. § 404.1594(f). Instead of explicitly applying the eight factors, the Appeals Council "adopt[ed] the Administrative Law Judge's findings at step one through five of the sequential evaluation process" for the time period after June 1, 2009. (Tr. 11). Defendant contends that the Appeals Council's decision still complies with the requirements listed in § 404.1594(f). The Court finds that if the Appeals Council appropriately considered all relevant steps, it is not reversible error to fail to lay them out sequentially. *Fiske v. Astrue*, No. 5:09-CV-00564-D, 2011 WL 915812, at *6 n. 2 (E.D.N.C. Jan. 28, 2011) *rep. and rec. adopted,* No. 5:09-CV-564-D, 2011 WL 915332 (E.D.N.C. Mar. 15, 2011) *aff'd,* 476 F. App'x 526 (4th Cir. 2012); *see Garner v. Astrue*, 436 Fed. App'x 224 (4th Cir. 2011) (detailing harmless error rule).

The eight-step evaluation set out in § 404.1494(f) requires the Commissioner to consider whether (1) the claimant has engaged in substantial gainful activity; (2) the claimant has an impairment or combination of impairments that meets or equals the requirements of the Listings; (3) the claimant has seen medical improvement in her previously disabling condition; (4) medical improvement is related to the claimant's ability to do work; (5) an exception to medical improvement applies; (6) all current impairments are severe; (7) a claimant's current RFC allows her to return to past relevant work; and, if not (8) the claimant can perform other work. *See* 20 C.F.R. § 404.1594(f). If the Commissioner finds conclusively that a claimant is disabled at any point in this process, review does not proceed to the next step.

i. Step One

The Appeals Council found that Davis had not engaged in substantial gainful activity since December 31, 2005, which encompasses the period in issue. (Tr. 11).

ii. Step Two

The Appeals Council determined that none of Plaintiff's prior impairments satisfied a Listing by making its finding of medical improvement. (Tr. 11-12). It also determined that none of Plaintiff's impairments satisfied a Listing by adopting the ALJ's findings at step one through five of the sequential evaluation process. (Tr. 13). The ALJ found that no impairment or combination of impairments met the requirements of the Listings. (Tr. 30-31).

iii. Step Three

The Appeals Council explicitly found that Davis had medical improvement as of June 2, 2009 by finding that Davis no longer met the Listings. (Tr. 11).

iv. Step Four

Step four states that:

> (4) If there has been medical improvement, we must determine whether it is related to your ability to do work in accordance with paragraphs (b)(1) through (4) of this section; i.e., whether or not there has been an increase in the residual functional capacity based on the impairment(s) that was present at the time of the most recent favorable medical determination. If medical improvement is not related to your ability to do work, see step (5). If medical improvement is related to your ability to do work, see step (6).

20 C.F.R. § 404.1594(f)(4).

The Appeals Council did not discuss whether or not Davis had an increase in his RFC. Plaintiff asserts that this was error. (Doc. 9-1, at 7). However, the Appeals Council is not required to make a comparison because no prior RFC existed. There is no prior RFC determination when a claimant is found disabled due to meeting a Listing. The regulation explicitly states that "[i]f our most recent favorable decision was based on the fact that your impairment(s) at the time met or equaled the severity contemplated by the Listing of Impairments in appendix 1 of this subpart, an assessment of your residual functional capacity would not have been made." 20 C.F.R. § 404.1594(c)(3)(i); *see also* 20 C.F.R. § 404.1520(a)(4) ("If we can find that you are disabled or not disabled at a step, we make our determination or decision and we do not go on to the next step."). Therefore, it was not error for the Appeals Council to fail to make a comparison.

The Appeals Council did determine that the medical improvement was related to Davis's ability to do work. "If medical improvement has occurred and the severity of the prior impairment(s) no longer meets or equals the same listing section used to make our most recent favorable decision, **we will find that the medical improvement was related to your ability to do work**." 20 C.F.R. § 404.1594(c)(3)(i) (emphasis added). The Appeals Council specifically referenced this portion of the regulation after finding that Davis no longer met Listing 12.03(A). (Tr. 12).

Plaintiff cites to the case of *Harlan v. Colvin*, No. 3:12-cv-443, 2013 WL 6729605 (W.D.N.C. Dec. 19, 2013) (Mullen, J.), as standing for the proposition that the ALJ must explain "how" medical improvement is related to the ability to do work rather than simply following the letter of the regulation. (Doc. 14, at 4). However, *Harlan* was not a Listings decision. *See id.* at *3 ("In this case, the ALJ determined at the fifth step that Plaintiff was disabled from October 31, 2005 through December 31, 2008."). Therefore, the aforementioned portion of 20 C.F.R. § 404.1594(c)(3)(i) was inapplicable. In *Harlan*, the ALJ was to determine whether the medical improvement was related to the ability to do work pursuant to (b)(1) through (4) of 20 C.F.R. 404.1594. 20 C.F.R. § 404.1594(f)(4). In non-Listings decisions, the medical improvement must result in a higher functional capacity to do work activities and be based on improvements in the symptoms, signs, or laboratory findings associated with the impairments. *See* §§ 404.1594(b)(4)(i); (c)(1). However, where a prior determination of disability is based on a finding that the claimant met the Listings and the medical improvement results in the claimant no longer meeting the Listings, the regulations find that it is automatically related to the ability to do work. This is a perfectly legitimate method of analysis because meeting the Listings equates to a finding of disability and, therefore, the inability to engage in substantial activity.

v. Step 5

Step five is inapplicable to the instant case. *See* 20 C.F.R. § 404.1594(f)(3) ("If there has been medical improvement as shown by a decrease in medical severity, see step (6).").

vi. Step 6

The Appeals Council determined that all of Plaintiff's previously determined severe impairments remained severe. (Tr. 11). Specifically, the Appeals Council stated that Davis had the following severe impairments: depression, a learning disorder, and a schizoaffective disorder. (*Id.*).

### vii. Step 7

The Appeals Council complied with Step 7 by adopting the ALJ's finding with regard to Davis's RFC. (Tr. 11). Specifically, the Appeals Council found that Davis had the RFC to perform a full range of work at all exertional levels except that he is limited to simple, routine, and repetitive tasks in a non-production oriented setting an environment that requires no contact with the public and no more than occasional contact with co-workers and supervisors. (*Id.*). Further, the Appeals Council found that he could not perform his past relevant work. (*Id.*).

### viii. Step 8

The Appeals Council explicitly found that "there are jobs that exist in significant numbers in the national economy that [Davis] can perform." (Tr. 11). In doing so, the Appeals Council incorporated the ALJ's analysis. (*See* Tr. 36-37). The vocational expert testified that there were jobs that exist in the national economy for a person with Davis's age, education, work experience, and RFC. (Tr. 36). The vocational expert testified that Davis could perform jobs such as hospital cleaner, potato chip sorter, and fishing reel assembler. (Tr. 36-37).

### B. The Commissioner's Finding Regarding Listing 12.03 Is Supported by Substantial Evidence

"A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with your impairment(s)." 20 C.F.R. § 404.1594(b)(1).[3]

Davis argues that substantial evidence does not support the Commissioner's finding that he did not meet Listing 12.03[4] after June 1, 2009 because (1) of its reliance on Dr. Smith's opinion; (2) the failure to find that that Davis met Listing 12.03(C)(3); (3) legal error in the evaluation of opinion evidence; and (4) legal error in the evaluation of testimony.

### 1. Dr. Smith's Opinion

---

[3] This case is distinguishable from *Harlan* in that the Commissioner had a specific piece of evidence stating that the medical improvement occurred as of a specific date, which was Dr. Smith's opinion. In *Harlan*, there was no evidence indicating that medical improvement was tied to the date in the decision. *Harlan*, 2013 WL 6729605 at *4. This is why Davis attacks the credibility of Dr. Smith's opinion.

[4] **12.03** *Schizophrenic, paranoid and other psychotic disorders*: Characterized by the onset of psychotic features with deterioration from a previous level of functioning.
The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.
    A. Medically documented persistence, either continuous or intermittent, of one or more of the following:
        1. Delusions or hallucinations; or
        2. Catatonic or other grossly disorganized behavior; or
        3. Incoherence, loosening of associations, illogical thinking, or poverty of content of speech if associated with one of the following:
            a. Blunt affect; or
            b. Flat affect; or
            c. Inappropriate affect;
    OR
        4. Emotional withdrawal and/or isolation;
AND
    B. Resulting in at least two of the following:
        1. Marked restriction of activities of daily living; or
        2. Marked difficulties in maintaining social functioning; or
        3. Marked difficulties in maintaining concentration, persistence, or pace; or
        4. Repeated episodes of decompensation, each of extended duration;
OR
    C. Medically documented history of a chronic schizophrenic, paranoid, or other psychotic disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
        1. Repeated episodes of decompensation, each of extended duration; or
        2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
        3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

The Appeals Council gave "substantial weight" to Dr. Smith's opinion after concluding that it was "consistent with the medical record and correlates with the clinical data." (Tr. 12). Dr. Smith is a psychological consultant to the Council and never met Davis. (*Id.*). Dr. Smith received the medical records and found that:

> The cumulative evidence supports a schizoaffective disorder with early active psychosis treated effectively with medicine. He developed prominent negative symptoms that did not remit until 2009. The impairment, psychotic disorder, met medical listing 12.03A1,4 . . . through 06-01-2009. In June of 2009 negative symptoms remitted, claimant became active in work, social, and personal spheres of live [*sic*]. The improvement is documented by treating and examining source [*sic*] and confirmed by claimant and third party.

In making this finding, Dr. Smith recounted the mental health treatment records of Dr. Murray Hawkinson. (Tr. 802). According to Dr. Smith, the records showed a progressive decline in psychological processes until the issues were effectively treated. (*Id.*). Namely, between 2006 and 2009 Davis's condition took a variable course. He had crazy thoughts and paced during the night in August of 2007. Dr. Smith discussed the fact that Davis experienced delusions and daily hallucinations in early 2008. (*Id.*). However, Dr. Smith found that the records showed that medication adjustment improved Davis's condition. For example, in January of 2009, Davis appeared stable with no major complaints except occasional mumbling. Further, in June of 2009, he reported doing okay and by August had worked for a couple of days. In September of 2009, Dr. Hawkinson found "striking improvement" because Davis had decided to improve his life: he engaged in securing and selling scrap iron; played guitar; and spent times with friends outside of the home. (*Id.*). Further, in April 2010 an independent exam was conducted. Dr. Smith found that this showed continued work activity, no interference from psychotic symptoms, and occasional breakthrough hallucination. (*Id.*).

Davis argues that Dr. Smith's conclusion that his disorder remitted in June of 2009 is not credible. First, Plaintiff argues that that Dr. Smith focused his analysis on a single symptom, which is adequately contradicted by examining Dr. Smith's opinion. (*See* Tr. 802-03). Next, Davis argues that the presence of some auditory hallucinations after June of 2009 means that Dr. Smith's opinion is not credible. However, Dr. Smith did not state that he had no hallucinations after June of 2009; rather, he concluded that the hallucinations did not rise to the level to meet Listing 12.03. (Tr. 803). Dr. Smith's medical opinion that the remaining hallucinations did not amount to "prominent negative symptoms," (Tr. 803) is not rebutted by Plaintiff's untrained characterization of the same evidence. Moreover, it is not the province of this Court to perform a new credibility analysis or reweigh the evidence after the Appeals Council has already done so. *See Johnson v. Barnhart*, 434 F.3d at 653.

Davis also argues that Dr. Smith's report lacks credibility because it did not discuss his prior delusions regarding disability benefits.

On May 19, 2008, Davis discussed his belief that accepting benefits from the government would cause him to run afoul of the influence of the Devil. (Tr. 451). Indeed, Dr. Hawkinson stated that he was rigid in his thinking "making it unlikely he would pursue disability payments and benefits unless some fundamental change occurred in his thinking." (*Id.*). Dr. Hawkinson stated that "[t]his may reflect frankly delusional thinking, though does not necessarily do so." (*Id.*).

First, Dr. Smith did discuss delusions in his report, despite Plaintiff claiming that he did not do so. (Tr. 802). In fact, Dr. Smith referenced this exact record when stating "[i]n May of 2008 delusions re-appeared indicating a worsening condition." (*Id.*). It bears repeating that these delusions occurred during the period where the Commissioner found Davis disabled.

13

Plaintiff states that "[t]here is no evidence whatsoever that Mr. Davis' delusions have improved." (Doc. 9-1, at 11). The Court finds that Plaintiff's subsequent application for disability benefits in early 2010 provides such evidence, especially considering the fact that Dr. Hawkinson opined that only a "fundamental change" would require him to pursue disability. (Tr. 451). Further, there is no evidence of these delusions after June 2009. *See Dumas v. Sweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983) ("The [Commisioner] is entitled to rely not only on what the record says, but also on what it does not say."); *Teague v. Astrue*, No. 1:11CV198-MR-DSC, 2012 WL 1835668, at *4 (W.D.N.C. Apr. 26, 2012) *rep. and rec. adopted,* No. 1:11CV198, 2012 WL 1835234 (W.D.N.C. May 21, 2012).

Davis also argues that Dr. Smith failed to address his emotional withdrawal and isolation.[5] The Court notes that both the Appeals Council and Dr. Smith addressed this element. The Appeals Council referenced the fact that Davis began to be more responsive and was working with a friend hauling scrap metal. (Tr. 11). Dr. Smith also referenced the scrap metal work and the fact that Davis began spending time with friends outside the home. (Tr. 803). The record reflects that Davis is quiet during his peer support group. He prefers to listen and observe because he is shy. (*See, e.g.*, Tr. 727, 730). However, he has participated in the group and made comments that were on topic. (Tr. 731, 734, 738, 776). Accordingly, the Court will not remand or reverse based on this argument.

Davis argues that Dr. Smith is not credible because he failed to address his Global Assessment of Functioning ("GAF") scores. First, the Court notes that Dr. Smith's opinion was

---

[5] The Court notes that Plaintiff's counsel failed to cite to the record in making this argument, contravening Local Rule of Civil Procedure 7.1(C) which provides that "[f]actual contentions shall be supported as specifically as possible by citation to exhibit number and page."

14

not the sole basis for the Commissioner's decision. The Appeals Council incorporated the ALJ's opinion regarding the GAF scores for the period after June 1, 2009. (Tr. 11). The ALJ noted that Davis' GAF scores "tend to reflect serious symptoms." (Tr. 34). However, the ALJ discussed the fact that GAF scores are "subjective, rather than an objective measure" and are not entitled to great weight in making disability determinations as per the *Diagnostic and Statistical Manual of Mental Disorders* (4th Ed.). (Tr. 34-35). The ALJ further noted that the low scores are inconsistent with the record which showed that Davis's mental condition has generally been stable; he has not required inpatient treatment; and his medications have improved his underlying condition. (Tr. 35). Further, the Court notes that many of the records evidencing the low GAF scores are the exact material relied upon by Dr. Smith as demonstrating medical improvement. The Court also finds that there is no meaningful discussion of the GAF scores for the period where the Commissioner found that Davis was no longer disabled. Consequently, any decision by the ALJ to disregard this information as conclusory, or discount it in light of competing evidence, is not prejudicial error requiring remand. *See Hunter v. Colvin*, No. 1:10CV401, 2013 WL 2122575, at *7 (M.D.N.C. May 15, 2013) (where treatment notes give no meaningful discussion of GAF scores, discounting or disregarding is not prejudicial error). Therefore, the Commissioner's decision to give little weight to the GAF scores is supported by substantial evidence. Further, it is immaterial that Dr. Smith failed to discuss the GAF scores.

Davis also argues that the Dr. Smith placed too much weight on the fact that he began collecting scrap metal. Neither the ALJ, the Appeals Council, nor Dr. Smith concluded that this amounted to substantial gainful activity. Dr. Smith solely found that the inclination to seek and become involved in work was a factor showing improvement in Davis's condition. (Tr. 802-03). Engaging in productive activity with a social component in that his scrap metal business was

15

done with a friend was inconsistent with the earlier findings made by Dr. Hawkinson. Therefore, the Court finds that Dr. Smith gave appropriate weight to Davis's work activity. [6]

2. Listing 12.03(C)(3) Was Not Met

Listing 12.03(C)(3) may be met if there is "medically documented history of chronic schizophrenic, paranoid, or other psychotic disorder of at least two years' duration that has caused more than a minimal limitation of ability to do basic work activities" along with a "[c]urrent history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.03(C). The C category is present in Listing 12.03 to recognize that "the prognosis of chronic schizophrenia may well include periods between acute bouts in which symptoms, while controlled enough to permit life outside an institution, still prevent the patient from pursuing normal employment." *Pagan v. Bowen,* 862 F.2d 340, 343 (D.C. Cir. 1988).

There is no specific definition of a "highly supportive living arrangement;" however, the introductory material to 12.00 provides a good explanation:

> F. *Effects of structured settings*: Particularly in cases involving chronic mental disorders, overt symptomatology may be controlled or attenuated by psychosocial factors such as placement in a hospital, halfway house, board and care facility, or other environment that provides similar structure. Highly structured and supportive settings may also be found in your home. Such settings may greatly reduce the mental demands placed on you. With lowered mental demands, overt symptoms and signs of the underlying mental disorder may be minimized. At the same time, however, your ability to function outside of such a structured or supportive setting may not have changed. If your symptomatology is controlled or attenuated by psychosocial factors, we must consider your ability to function outside of such highly structured settings. For these reasons, identical paragraph C criteria are included in 12.00, 12.02, 12.03, and 12.04.

---

[6] Davis has only objected to the findings present with regard to 12.03(A). However, in order to satisfy Listing 12.03, one must satisfy the requirements of 12.03(A) and 12.03(B). In the alternative, a claimant may satisfy 12.03(C). Here, the Appeals Council incorporated the finding of the ALJ, for the period after June 1, 2009, that Davis did not meet the criterion of 12.03(B). (Tr. 11, 30). No argument has been made in regard to 12.03(B). Accordingly, this a further basis for upholding the Commissioner's decision.

*Id.* § 12.00(F) (emphasis added). District courts have found that the prison environment and a mental health organization where the plaintiff lived and received treatment to fall within the mandate of a "highly supportive living arrangement." *Johnson v. Colvin*, No. CIV.A. 1:12-3277-SB, 2014 WL 1000887, at *4 (D.S.C. Mar. 13, 2014) (collecting cases). This district found that a plaintiff who lived with her disabled husband did not reside in a "highly supportive living arrangement" when the plaintiff "at times . . . require[d] assistance, reminders or periods of rest" when the plaintiff regularly bathed and clothed herself, cooked, drove, and used a checkbook. *Wheeler v. Colvin*, No. 1:13-CV-250-RJC, 2014 WL 4053528, at *4 (W.D.N.C. Aug. 15, 2014) (Conrad, J.). Further, living with parents does not amount to a "highly supportive living arrangement" when a claimant "take[s] care of almost all of his personal needs and ma[kes] substantial contributions to the household without a high degree of supervision." *McIntosh v. Barnhart*, 172 F. App'x 592, 593 (5th Cir. 2006).

Here, the Appeals Court did not consider the (C) criteria. Rather, it adopted the finding of the ALJ. The ALJ stated, after summarizing some of the record, that "the record does not document the existence of any of these three criteria . . . . The claimant remains independent in activities of daily living and does not require a supportive living arrangement." (Tr. 31).

Earlier, the ALJ noted that "the claimant is able to drive, attend to his own personal care, enjoy hobbies, including hunting, fishing, and auto mechanics." (*Id.*). This is supported by the record and the transcript. For example, Davis was encouraged to come to his appointments by himself and has done so. (Tr. 418, 426). Davis testified that he occasionally does shopping for himself and sees people socially. (Tr. 51). However, his mother does all of the chores (Tr. 51), except that Davis will mow the lawn in the summertime, (Tr. 50). Davis will cook for himself

17

on occasion. (Tr. 54). Davis sleeps in the living room sometimes, does not have his own bank account, and his parents give him his medicine. (Tr. 53, 62-63).

The Court finds that substantial evidence supports the final decision of the Commissioner. The ALJ gave adequate consideration to record both before and after concluding that Davis did not meet Listing 12.03(C) and it is not the province of this Court to reweigh the evidence because there is substantial evidence to support the conclusion. Accordingly, the Court will not remand pursuant to this argument.

> C. The Commissioner Did Not Commit Legal Error in the Evaluation of Opinion Evidence

Davis argues that the Commissioner committed legal error in the evaluation of opinion evidence by not crediting Dr. Hawkinson's statements stating that he should apply for social security. The final determination of disability is reserved to the Commissioner and opinions from medical sources stating that a person is disabled are not entitled to any special significance. 20 C.F.R. § 404.1527(d). The Court notes that all of the statements cited by Davis were made during the period that the Commissioner found him disabled. Further, these statements do not amount to medical opinions entitled to special treatment. The Appeals Council relied on the opinion of Dr. Smith, who extensively reviewed Dr. Hawkinson's opinions. The Appeals Council also conducted its own independent review of the medical record to support its findings and this Court has been presented with no evidence not to take it at its word. *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014). Moreover, the evidence presented by Davis regarding Dr. Hawkinson's opinion cannot change the outcome of his disability claim. Therefore, the Court will not remand on this basis.

> D. The Commissioner Did Not Commit Legal Error in the Evaluation of Lay Testimony

As an initial matter, it is not the province of this Court to substitute its own judgment on credibility so long as the decision is supported by substantial evidence. *Johnson*, 434 F.3d at 653.

Davis's first argument regarding the evaluation of the testimony states that the Appeals Council did not explain why Davis's testimony was not fully credible. The Appeals Council found that Davis's "subjective complaints are not fully credible for the reasons identified in the body of the decision." (Tr. 13). Davis argues that the body of the decision does not contain any credibility analysis. However, the Appeals Council incorporated the findings of the ALJ after June 1, 2009. (Tr. 11). The ALJ made a sufficient credibility finding. (Tr. 34). Therefore, the Court will not reverse on this basis.

Davis's next argument is that he was not competent to testify and that the ALJ's adverse credibility finding against his mother is tainted because of the ALJ's assumption that he was competent to testify. This is, in effect, another to attempt to disagree with the Commissioner's ultimate finding that Davis is not disabled after June 2, 2009. Plaintiff cites poor scores on the Kaufmann Test of Educational Achievement as evidencing that he has "a severe deficit in his cognitive functioning." (Doc. 9-1, at 16). However, these low scores were based on Davis's learning problems and not because he was incompetent. (Tr. 686-87). In fact, those administering the tests found that he was capable of working a full time job. (Tr. 687). Counsel for Plaintiff also solicited Davis's testimony and did not object to his competency at the hearing. Therefore, this Court finds that there was substantial evidence to support the Commissioner's decision regarding the adverse credibility finding.

**IT IS ORDERED, THEREFORE, THAT**

(1) Davis's Motion for Summary Judgment (Doc. 9) is **DENIED**;

(2) The Commissioner's Motion for Summary Judgment (Doc. 11) is **GRANTED**; and

(3) The final decision of the Commissioner is **AFFIRMED.**

Signed: January 29, 2015

Richard L. Voorhees
United States District Judge